JOHN H. WARREN, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Warren v. Commissioner
Docket No. 16974-88
United States Tax Court
T.C. Memo 1993-405; 1993 Tax Ct. Memo LEXIS 413; 66 T.C.M. (CCH) 600; September 2, 1993, Filed *413 For petitioner: Stephen D. Gardner. For respondent: Rose E. Gole. WHALEN
WHALEN
MEMORANDUM OPINION WHALEN, Judge: Respondent determined the following deficiency in, and additions to, petitioner's Federal income tax for 1984: Additions to Tax
Sec.
Sec. Sec.
Sec.
Deficiency
6653(a)(1)
6653(a)(2) 6659
6661
$ 22,013
$ 1,100.65
50% of the
$ 3,253.50
$ 4,568.25
interest due
on $ 10,845
All section references are to the Internal Revenue Code. Respondent also determined that part of the underpayment for 1984 is subject to the increased annual rate of interest prescribed by section 6621(c). After concessions, the sole issue for decision involves the method of computing the additions to tax under sections 6653(a)(2) and 6659, and the increased rate of interest under section 6621(c). Specifically, the parties to this case disagree about what portion of the tax deficiency is subject to the additions to tax and to the increased rate of interest. Background
Petitioner is an attorney. At the time the petition in this case was filed on his behalf, petitioner resided on St. Croix, Virgin Islands. Petitioner filed his Federal income tax return *414 for 1984 on Form 1040. He chose "married filing separate return" as his filing status. Petitioner included with his return a Schedule C, Profit or (Loss) From Business or Profession, on which he reported gross income of $ 72,423 from his law practice. He claimed the following deductions from the income of that business: Dues and publications
$    961
Legal and professional services
607
Office expense
1,159
Travel and entertainment
23,162
Utilities and telephone
4,983
Secretarial services
2,120
Total deductions
32,992
Petitioner included with his return a second Schedule C on which he reported the income and deductions from a so-called "equipment leasing" business involving "photocopy machines". Petitioner reported a net loss of $ 22,912 from that activity, computed as follows: Gross income
$ 112,752 Depreciation
(84,228)
Interest on business indebtedness
(51,436)
Net loss
(22,912)
Finally, petitioner included with his return a Schedule A, Itemized Deductions, on which he claimed a deduction for interest paid in the amount of $ 7,751. This deduction is described on Schedule A as "Loan M Warren". Petitioner's return reports taxable income of $ *415 4,247. After deducting a credit of $ 50 for political contributions, petitioner's return shows tax computed under section 1 of $ 251. Petitioner's return also shows alternative minimum tax, computed under section 55, of $ 2,520. Thus, the total amount shown as tax upon petitioner's return is $ 2,771. Attached to petitioner's return is Form 6251, Alternative Minimum Tax Computation. The only tax preference item reported on that form is "accelerated depreciation on leased personal property or leased recovery property other than 15 (or 18) -- year real property" in the amount of $ 16,861. This tax preference item is based upon the depreciation of $ 84,228 claimed on the Schedule C filed with respect to petitioner's alleged equipment leasing activity. If petitioner had not claimed the deduction for accelerated depreciation in connection with the equipment leasing activity, no alternative minimum tax would have been due. In the notice of deficiency that is the subject of this proceeding, respondent disallowed the above deductions claimed by petitioner, viz: Schedule C, law practice
$ 32,992
Schedule C, equipment leasing
22,912
Interest expense
7,751
Total adjustment
63,655
*416 As explained in the notice of deficiency, respondent disallowed the net loss from the equipment leasing business on the ground that petitioner: cannot be considered the owner of the equipment with respect to which said deductions are reported since, after examination of all the fact [sic] and circumstances, you are found not to have incurred the benefits and burdens of ownership of the equipment or to have made, in substance, a true economic investment in said equipment.
Respondent disallowed the other deductions on the ground that they had not been substantiated. After the instant petition involving petitioner's 1984 return was filed on petitioner's behalf, we filed our opinion in Warren v. Commissioner, T.C. Memo. 1989-34, involving petitioner's individual income tax returns for 1980, 1982, and 1983, and his joint income tax return for 1981. One of the issues in that case involved petitioner's eligibility to claim net losses from the same or similar equipment leasing transactions as involved in the instant case. In Warren v. Commissioner, supra, we held that petitioner was not entitled to the net losses *417 from the activity because the transactions between petitioner and the ostensible seller-lessee did not constitute sales for tax purposes, with the result that "petitioner did not invest and had no basis in the equipment." We also sustained respondent's determination of additions to tax under sections 6653(a), 6659, and 6661, and we sustained respondent's determination of the increased rate of interest under section 6621(c). After our opinion in Warren v. Commissioner, supra, was issued, the instant case was called from the calendar of a trial session in New York City. Respondent's counsel appeared and advised the Court that the parties had reached the basis for settlement set forth in a letter from petitioner's counsel. The body of that letter states as follows: Pursuant to our conversation this morning, please be advised that we will consent, on behalf of Petitioner, John Warren, to a decision which will be prepared to reflect the following: (a) Petitioner's deduction for $ 22,912 of Schedule C losses attributable to his equipment leasing transaction will be dissallowed [sic]; (b) Petitioner's interest expense from other than equipment *418 leasing will be allowed in the amount $ 7,751.00; (c) Petitioner's Schedule C losses attributable to his law practice in excess of $ 25,161.00 will be disallowed; (d) The negligence penalty under Section 6653(a), the valuation understatement penalty under Section 6659, and the increased rate of interest under Section 6621(c) will be imposed on the portion of the deficiency attributable to the equipment leasing disallowances.
Based on respondent's representations and the letter from petitioner's attorney, the Court ordered the parties to prepare and submit decision documents in conformity with their settlement, and it continued the case pending receipt of those documents. Thereafter, respondent filed with the Court a document entitled Motion For Order To Show Cause Why Judgment Should Not Be Entered Against Petitioner, in which respondent states that the parties are unable to agree on the computation of the additions to tax under sections 6653(a)(2) and 6659 and the additional interest under section 6621(c). Respondent's motion asks the Court to find the following: That there is a deficiency in income tax due from the petitioner for the taxable year 1984 in the amount *419 of $ 6,853; That there is an addition to the tax due from the petitioner for the taxable year 1984 under the provisions of I.R.C. § 6653(a)(1), in the amount of $ 343; That there is an addition to the tax due from the petitioner for the taxable year 1984 under the provisions of I.R.C. § 6653(a)(2), in the amount of 50% of the interest due on $ 6,853; That there is an addition to tax due from the petitioner for the taxable year 1984 under the provisions of I.R.C. § 6659, in the amount of $ 2,056; That there is no addition to tax due from petitioner for the taxable year 1984 under the provisions of I.R.C. § 6661; and That $ 6,853 in income tax due from the petitioner for the taxable year 1984 is a substantial underpayment attributable to tax motivated transactions for purposes of computing interest payable with respect to such amount under the provisions of I.R.C. § 6621(c).
Discussion
The parties to this case have agreed to a settlement calling for two adjustments to be made to petitioner's 1984 return. The first adjustment is the disallowance of the entire loss of $ 22,912 claimed on the return with respect to certain equipment leasing transactions. The second adjustment *420 is the disallowance of $ 7,831 of the deductions claimed on the return with respect to petitioner's law practice (i.e., total deductions of $ 32,992 less allowable deductions of $ 25,161). The parties agree that the taxable income reported on petitioner's 1984 return, $ 4,247, must be increased by the sum of those adjustments, $ 30,743, and based upon the taxable income as thus adjusted, $ 34,990, the parties agree that petitioner's tax liability for 1984 is $ 9,624. That amount is $ 6,853 more than the tax reported on his return, $ 2,771. The parties agree that the additions to tax under sections 6653(a)(2) and 6659, and the increased rate of interest imposed by section 6621(c), are applicable. They disagree about how those additions and increased interest should be computed. Section 6653(a)(2) imposes an addition to tax equal to 50 percent of the interest payable "with respect to the portion of the underpayment * * * which is attributable to the negligence". Sec. 6653(a)(2)(A). For this purpose, and as pertinent herein, section 6653(c)(1) defines the term "underpayment" to mean "a deficiency" as defined by section 6211. Section 6659 prescribes an addition to tax if an individual *421 "has an underpayment of the tax imposed by chapter 1 for the taxable year which is attributable to a valuation overstatement". In that event, section 6659 imposes an addition to tax equal to a certain percentage "of the underpayment so attributable." Sec. 6659(a). For this purpose, section 6659(g)(1) states: "The term 'underpayment' has the meaning given to such term by section 6653(c)(1)." Thus, for purposes of both sections 6659 and 6653(a)(2), the term underpayment means "a deficiency" as defined by section 6211. Section 6621(c) provides that the annual rate of interest payable under section 6601 shall be 120 percent of the rate which would otherwise apply "with respect to any substantial underpayment attributable to tax motivated transactions". Sec. 6621(c)(1). The term "substantial underpayment attributable to tax motivated transactions" is defined to mean "any underpayment of taxes * * * attributable to 1 or more tax motivated transactions if the amount of the underpayment for such year so attributable exceeds $ 1,000." Sec. 6621(c)(2). For this purpose, the temporary regulations promulgated under section 6621(c) provide that "A tax motivated underpayment is the portion *422 of a deficiency (as defined in section 6211) of tax * * * that is attributable to any of the following tax motivated transactions". Sec. 301.6621-2T, Q&A-2, Temporary Proced. & Admin. Regs., 49 Fed. Reg. 50391 (Dec. 28, 1984). None of the three Code provisions at issue sets forth a method for determining the portion of an underpayment that is allocable to a particular adjustment. Similarly, the regulations under sections 6653(a)(2) and 6659 give no direction on that point. However, the temporary regulations promulgated under section 6621(c) do address the issue. Question and answer 5 of section 301.6621-2T, Temporary Proced. & Admin. Regs., 49 Fed. Reg. 50392 (Dec. 28, 1984), states as follows: Q-5. How is the amount of a tax motivated underpayment determined? A-5. Except as provided in A-6 of this section, the amount of a tax motivated underpayment is determined in the following manner: (1) Calculate the amount of the tax liability for the taxable year as if all items of income, gain, loss, deduction, or credit, had been reported properly on the income tax return of the taxpayer ("total tax liability"); and (2) Without *423 taking into account any adjustments to items of income, gain, loss, deductions, or credit that are attributable to tax motivated transactions (as defined in A-2 through A-4 of this section), calculate the amount of the tax liability for the taxable year as if all other items of income, gain, loss, deduction, or credit had been reported properly on the income tax return of the taxpayer ("tax liability without regard to tax motivated transactions"). (3) The difference between the total tax liability and the tax liability without regard to tax motivated transactions is the amount of the tax motivated underpayment.
Respondent argues that the additions and increased interest that are in dispute must be computed in conformity with the above-quoted question and answer 5 of section 301.6621-2T, Temporary Proced. & Admin. Regs., supra, which prescribes the calculation of the "amount of the tax motivated underpayment". As applied to this case, respondent asserts that the tax motivated underpayment is computed as follows: Total Tax Liability
Total Tax
Without Regard to Tax
1984 Liability
Motivated Transactions
Difference
Adjustments to income:
Schedule C, law practice
$  7,831 $  7,831 Schedule C, equipment
22,912 --  leasing
Total adjustments
30,743 7,831 Taxable income reported
4,247 4,247 Taxable income as revised
34,990 12,078 Tax
9,674 1,683 Credit for political
(50)
(50)
contribution
Tax liability
9,624 1,633 $ 7,991
*424 We note that, in effect, "the tax motivated underpayment" as thus computed, $ 7,991, is the portion of the total tax liability that is attributable to the equipment leasing adjustment. Since "the tax motivated underpayment" as computed above, $ 7,991, is greater than the deficiency, $ 6,853, respondent concludes that the amount that is subject to section 6621(c) is the entire deficiency. According to respondent, this result is required by question and answer 9 of section 301.6621-2T, Temporary Proced. & Admin. Regs., 49 Fed. Reg. 50393 (Dec. 28, 1984), which provide as follows: Q-9. What amount is subject to the 120 percent rate if the amount of a taxpayer's unpaid tax for a year is less than the taxpayer's substantial tax motivated underpayment? A-9. The 120 percent rate applies with respect to the lesser of -- (1) The amount of unpaid tax for the taxable year determined in accordance with section 301.6601-1; or (2) The substantial tax motivated underpayment for the taxable year.
"In other words," according to respondent, "the temporary regulation states that the increased interest rate is computed on the lesser of the unpaid tax or the *425 tax motivated underpayment." Respondent argues that, under the regulation, "The unpaid tax, which corresponds with the deficiency, is computed in accordance with I.R.C. section 6211." Thus, respondent asserts, the amount subject to section 6621(c) is the entire deficiency, $ 6,853. Respondent further asserts that the same amount is subject to the additions to tax under sections 6653(a)(2) and 6659. In objection to respondent's motion, petitioner emphasizes that "The parties agree as to the * * * applicability of the penalties and penalty interest on that portion of the deficiency attributable to Petitioner's equipment leasing activities." He reasons that because the deficiency was brought about by two adjustments, some portion of the deficiency must be attributable to each of the adjustments. Accordingly, petitioner argues, respondent is wrong to impose the additions to tax and increased interest on the entire deficiency. Petitioner contends that the portion of the deficiency attributable to the equipment leasing adjustment is $ 5,471, computed as follows: Total Tax Liability
Total Tax
Without Regard to
1984
Liability
Tax Motivated
Transactions
Difference
Adjustments to income:
Schedule C, law
$  7,831 $  7,831 practice
Schedule C, equipment
22,912 --  leasing
Total adjustments
30,743 7,831 Taxable income reported
4,247 4,247 Taxable income as
34,990 12,078 revised
Tax
9,674 1,683 Credit for political
(50)
(50)
contribution
Tax liability
9,624 1,633 $ 7,991 Tax shown on return:
Alternative minimum
($ 2,520)
tax, section 55
Tax under section 1
(251)
(2,771)
(251)
(2,520)
Deficiency
6,853 1,382 5,471 *426 As is evident from the above, petitioner follows the same approach as respondent in computing the portion of the total tax liability under the settlement that is attributable to the equipment leasing adjustment. Like respondent, petitioner computes that amount, $ 7,991, as the difference between the total tax liability under the settlement and the tax liability computed without regard to the equipment leasing adjustment. Unlike respondent, petitioner allocates a portion of the tax shown on his 1984 return to the equipment leasing adjustment. The total income tax shown on petitioner's return is $ 2,771, of which $ 251 is the regular tax computed under section 1 and $ 2,520 is alternative minimum tax computed under section 55. Petitioner does not claim that any part of the tax computed under section 1 is allocable to the equipment leasing adjustment but claims that the alternative minimum tax is entirely allocable to the equipment leasing transaction. He then subtracts that allocated portion of the tax shown on his return from the total tax liability attributable to the equipment leasing adjustment to reach the portion of the deficiency to which the addition to tax and the increased *427 interest should be applied. Petitioner's position is that the alternative minimum tax is "wholly, and exclusively, attributable to accelerated depreciation taken by Petitioner on the photocopy machines which were the subject of Petitioner's equipment leasing activities." Petitioner makes this argument as follows: because of the agreed to settlement which disallowed deductions attributable to Petitioner's equipment leasing activities, the alternative minimum tax of $ 2,520 which Petitioner paid with his original return is no longer due and must be credited to taxes owed by petitioner. * * * Petitioner's contention is that because the alternative minimum tax was paid as a result of petitioner's entering into equipment leasing activities, these amounts (sic) should properly be credited against the deficiency resulting from disallowing deductions attributable these activities. * * * Respondent ignores the fact that the reason the total deficiency is less than the tax due on the disallowed deductions is because of the $ 2,520 of alternative minimum tax paid with respect to petitioner's equipment leasing activities.
Thus, petitioner argues that respondent errs by failing *428 to allocate the alternative minimum tax in the amount of $ 2,520 to the equipment leasing adjustment in calculating the portion of the deficiency attributable to the equipment leasing disallowance. In deciding this case, it is significant that neither of the parties seeks to be relieved of the terms of the settlement agreement set forth in the letter from petitioner's counsel that was filed by respondent in the record of this case. Cf. Stamm Intl. Corp. v. Commissioner, 90 T.C. 315 (1988). To the contrary, both parties seek to enforce the settlement according to its terms. The disagreement between the parties involves the construction of item (d) of the settlement agreement, which states as follows: (d) The negligence penalty under Section 6653(a), the valuation understatement penalty under Section 6659, and the increased rate of interest under Section 6621(c) will be imposed on the portion of the deficiency attributable to the equipment leasing disallowances.
Thus, the settlement calls for an allocation of the "deficiency" between the equipment leasing adjustment and the other adjustment in the case. Section 6211 defines the term "deficiency" *429 as follows: (a) In General. -- For purposes of this title in the case of income, estate, and gift taxes imposed by subtitles A and B and excise taxes imposed by chapters 41, 42, 43, 44, and 45 the term "deficiency" means the amount by which the tax imposed by subtitle A or B, or chapter 41, 42, 43, 44, or 45 exceeds the excess of -- (1) the sum of (A) the amount shown as the tax by the taxpayer upon his return, if a return was made by the taxpayer and an amount was shown as the tax by the taxpayer thereon, plus (B) the amounts previously assessed (or collected without assessment) as a deficiency, over -- (2) the amount of rebates, as defined in subsection (b)(2), made.
Reduced to its simplest terms, a deficiency, as defined above, is the excess of "the tax imposed by subtitle A" over "the amount shown as the tax by the taxpayer upon his return". Sec. 6211(a). The parties agree that, under the settlement, "the tax imposed by subtitle A" is $ 9,624. They also agree that "the amount shown as the tax by the taxpayer upon his return" is $ 2,771. Accordingly, under the settlement, there is a deficiency in petitioner's income tax for 1984 of $ 6,853. The instant settlement *430 requires the parties to apply the additions to tax and the increased rate of interest that are in dispute to "the portion of the deficiency attributable to the equipment leasing disallowances." In essence, we must determine the net amount of tax that petitioner avoided by engaging in the equipment leasing transaction. To reach that end, as we read it, the settlement calls for an allocation of both of the components of the deficiency, "the tax imposed by subtitle A" in the amount $ 9,624, and "the amount shown as the tax by the taxpayer upon his return," $ 2,771. The settlement contemplates that each of those components will be allocated among three items, the $ 4,247 of taxable income originally reported on petitioner's return, and each of the two adjustments made under the settlement, the disallowance of $ 7,831 of the deductions claimed with respect to petitioner's law practice and the disallowance of $ 22,912, the net loss claimed with respect to the equipment leasing adjustment. As to the first component, "the tax imposed by subtitle A" in the amount of $ 9,624, the parties agree that $ 7,991 of that amount is attributable to the equipment leasing adjustment and that the remainder, *431 $ 1,633, is attributable to the rest of petitioner's taxable income, including the law practice adjustment. The computations prepared by both parties recognize that $ 251 of that $ 1,633 of tax liability corresponds with the $ 4,247 of taxable income reported on petitioner's return. Therefore, the remaining $ 1,382 must correspond with the disallowance of the $ 7,831 of deductions relating to petitioner's law practice. The parties disagree about the allocation of the second component, "the amount shown as the tax by the taxpayer upon his return." Specifically, they disagree about the allocation of the portion of the second component consisting of alternative minimum tax. The narrow issue for decision is what part, if any, of the $ 2,520 of alternative minimum tax reported corresponds with the $ 7,991 of tax liability attributable to equipment leasing adjustment. Any such correspondence will lower the net tax savings achieved by having engaged in the equipment leasing transaction, and thus lower "the portion of the deficiency attributable to the equipment leasing disallowances" under the agreement. Respondent's computation applies the additions to tax and the increased interest *432 in dispute to the entire deficiency. Respondent takes the position that the tax motivated underpayment must be computed under the regulations, and that, in doing so, no part of the tax shown on petitioner's return is allocable to the equipment leasing adjustment. As mentioned above, respondent asserts that this position follows from the application of questions and answers 5 and 9 of section 301.6621-2T, Temporary Proced. & Admin. Regs., 49 Fed. Reg. 50392, 50393 (Dec. 28, 1984). Question and answer 9 provides that the increased interest rate is imposed on the lesser of the "unpaid tax" or the "tax motivated underpayment". According to respondent, that regulation applies in a case like this, where the deficiency is less than the tax motivated underpayment. According to respondent, "the unpaid tax * * * corresponds with the deficiency, [and] is computed in accordance with I.R.C. section 6211." Thus, respondent concludes that the increased rate of interest applies to the entire deficiency. We have a number of difficulties with respondent's reasoning. Principally, as discussed above, we read the settlement agreement between the parties to require the *433 tax shown on petitioner's return, the second component of a deficiency, to be allocated between the equipment leasing adjustment and the other adjustment. The regulations on which respondent relies as authority for the proposition that no tax can be allocated to the equipment leasing adjustment, questions and answers 5 and 9 of section 301.6621-2T, Temporary Proced. & Admin. Regs., supra, are not referred to in the settlement agreement, and we can find no basis on which to vary our reading of the settlement agreement based on those regulations. Therefore, even if the regulations promulgated under section 6621(c) require a result that differs from the result reached under the settlement, the settlement nevertheless controls. See Stamm Intl. Corp. v. Commissioner, 90 T.C. at 322 (1988); Stanley v. Commissioner, T.C. Memo. 1991-20. In a typical case, no part of the tax shown on the return is attributable to a deduction that is later disallowed by respondent. However, in this case, petitioner was required to report the alternative minimum tax of $ 2,520 solely because he claimed accelerated depreciation on the "photocopy *434 machines" that were a part of the equipment leasing activity. In effect, the imposition of the $ 2,520 of alternative minimum tax lowered petitioner's net tax saving achieved by having engaged in the equipment leasing transaction from $ 7,991 to $ 5,471. In other words, now that the tax benefits from the equipment leasing activity have been disallowed and the alternative minimum tax has been found to be unnecessary, it is appropriate to allocate the alternative minimum tax reported as part of equipment leasing activity to the portion of the deficiency that is attributable to that activity. Accordingly, we agree with petitioner that respondent's computation does not yield "the portion of the deficiency attributable to the equipment leasing disallowances" as required by the settlement. Although respondent does not propound a theory for allocating the alternative minimum tax, respondent does assert that "$ 184 of the alternative minimum tax is attributable to other items"; i.e., items other than the equipment leasing adjustment. To demonstrate that assertion, respondent points to the fact that the alternative minimum tax would increase by $ 184, from $ 2,520 to $ 2,704, if petitioner's *435 adjusted gross income were increased by $ 7,831, the amount of the law practice adjustment, and no other change were made to petitioner's return. We agree with respondent that adding $ 7,831 to the income reported on petitioner's 1984 return would cause an increase of $ 184 in the alternative minimum tax. This is because the additional regular tax, $ 1,382, caused by adding $ 7,831 to petitioner's income is $ 184 less than 20 percent of the adjustment, $ 1,566 (i.e., $ 7,831 x 20%). We note, however, that the $ 184 of additional alternative minimum tax would be caused by a hypothetical increase in petitioner's income that would result if the equipment leasing loss were not disallowed. It is not part of the alternative minimum tax actually reported on petitioner's return, $ 2,520. As to the latter amount, we agree with petitioner that it is wholly and exclusively attributable to the accelerated depreciation taken by petitioner in connection with the equipment leasing activity. Accordingly, we agree with petitioner that $ 2,520 is allocable to the equipment leasing adjustment and that under the instant settlement the portion of the deficiency attributable to the equipment leasing *436 adjustment is $ 5,471, computed as follows: Without Regard to
With Regard to
Total
Equipment Leasing
Equipment Leasing
Tax
$ 9,624
$ 1,633 $ 7,991 imposed
Tax shown
2,771
(251)
(2,520)
on return
Deficiency
6,853
1,382 5,471 An appropriate order will be issued.